# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BIAZZO DAIRY PRODUCTS, INC., | : | Civil No. 1:25-CV-00506 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| COMMONWEALTH OF | : | |
| PENNSYLVANIA and THE | : | |
| PENNSYLVANIA MILK | : | |
| MARKETING BOARD, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

Before the court is a motion to dismiss filed by Defendants the

Commonwealth of Pennsylvania ("the Commonwealth") and the Pennsylvania

Milk Marketing Board[1] ("Milk Board") (collectively, "Defendants").  (Doc. 16.)

Defendants allege that Plaintiff Biazzo Dairy Products, Inc. ("Biazzo") fails to

state a claim upon which relief can be granted in its amended complaint.  (*Id.*; Doc.

17.)  Pennsylvania law requires that Biazzo post a bond to purchase milk from

Pennsylvania milk producers.  (Doc. 13, pp. 6–7.)[2]  Biazzo claims the bond

requirement violates the dormant Interstate Commerce Clause of the United States

---

[1] The Pennsylvania Milk Marketing Board is now the Pennsylvania Milk Board.  31 P.S. § 700j-103.  However, because the parties refer to this Defendant as the Pennsylvania Milk Marketing Board, the court does as well for consistency.

[2] For ease of reference, the court uses the page numbers from the CM/ECF header.

Constitution.  (*Id.* at 6–8.)  For the reasons that follow, Defendants' motion to dismiss will be granted.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Biazzo is a New Jersey corporation that makes cheese products.  (Doc. 13, p. 2.)  Biazzo buys milk from Pennsylvania farmers and has that milk delivered to New Jersey.  (*Id.* at 3.)  Biazzo has no physical presence in Pennsylvania; none of its officers, employees, or shareholders live in Pennsylvania, and it neither owns the tanker trucks used to deliver the milk it buys nor employs the drivers of those trucks.  (*Id.*)

New management assumed control of Biazzo in 2024.  (*Id.*)  Soon after, the Milk Board contacted Biazzo and informed the company that it qualified as a "milk dealer" under Pennsylvania law and, accordingly, had to post an annual bond with the Milk Board to continue buying milk from Pennsylvania milk producers.  (*Id.*)  The Pennsylvania General Assembly passed the Milk Producers' Security Act ("Milk Security Act"), 31 P.S. §§ 626.1–626.15, which implements this bond requirement, to protect Pennsylvania milk producers from nonpayment on milk sales.  *Id.* § 626.2.  The Milk Security Act defines the term "milk dealer," in relevant part, as "[a]ny person who purchases or receives or handles on consignment or otherwise milk within the Commonwealth, for sale, shipment, storage, processing or manufacture, within or without the Commonwealth, whether

on behalf of the person or others, or both."  *Id.* § 626.4; *see also* 31 P.S. § 700j-103 (providing the same definition for the terms "milk dealer" and "milk handler"). Pennsylvania law requires that each milk dealer "file with the [Milk Board] a corporate surety bond or collateral bond."  *Id.* § 626.7(a).  The amount of the bond each milk dealer is required to pay is calculated using the "highest aggregate amount owed by the milk dealer to all producers[3] for a 40-day period during the preceding 12 months."  *Id.* § 626.7(c)(1)–(2).  Milk Board regulations define "amount owed," in relevant part, as "the actual amount the milk dealer lawfully paid the producer."  7 Pa. Code § 151.9(b)(2).[4]  The court refers to these statutes and the Milk Board regulation as "the bond requirement," collectively.

Biazzo posted the bond.  (Doc. 13, p. 4.)  Then, in September 2024, it filed a petition before the Milk Board challenging the bond requirement.  (*Id.*)  After Biazzo filed its petition, the Milk Board informed it that, instead of posting a second annual bond, Biazzo could participate in the "Pennsylvania Security Fund"

---

[3] A milk producer is a "person producing milk."  31 P.S. § 626.4.

[4] For purchases subject to a minimum price fixed by the milk board, "'amount owed' means the amount the milk dealer was required to pay the producer under the applicable [Milk Board] order, even though the actual amount paid exceeded the [Milk Board]-established minimum price."  7 Pa. Code § 151.9(b)(1).  When a purchase is not subject to a minimum price, "'amount owed' means the actual amount the milk dealer lawfully paid the producer."  *Id.* §151.9(b)(2). Biazzo cites § 151.9(b)(2) in its amended complaint, so the court assumes that its milk purchases are not subject to a minimum price set by the Milk Board. (Doc. 13, p. 7.)

("security fund")[5] if it posted a $500,000 security and paid an additional $1,100 per month into the fund. (*Id.* at 5.) Biazzo decided to participate in the security fund, and the Milk Board treated its petition as a request to participate in the security fund. (*Id.*) The Milk Board held a hearing on Biazzo's petition on May 7, 2025, but the agreement allowing Biazzo's participation in the security fund awaited ratification by the Milk Board when Biazzo filed its amended complaint. (*Id.*)

Biazzo filed its amended complaint in this court on June 6, 2025, after "realizing [that], as an administrative agency, the Milk Board lacks the authority to declare [a] statute passed by the Commonwealth legislature to be unconstitutional." (*Id.* at 4–5.) Therein, it raises two constitutional claims and one claim for declaratory judgment. (*Id.* at 6–9.) First, it alleges that the bond requirement is "unconstitutional per se and unconstitutional as applied" because it violates the dormant Interstate Commerce Clause of the United States Constitution by placing "an impermissible burden on [Biazzo] and a detriment to the public in terms of higher prices to offset the costs of the bonds." (*Id.* at 6–7.) Second, it alleges that Milk Board regulation 7 Pa. Code § 151.9(b)(2), which defines the term "owed" as

---

[5] Milk dealers who participate in in the security fund created by the Milk Security Act, 31 P.S. § 626.9, are "vested milk dealers" and must pay a bond "equal to a minimum of 30% of the highest aggregate amount owed by the vested milk dealer to all producers for a 40-day period during the preceding 12 months." 31 P.S. § 626.7(c)(2). Non-vested milk dealers must file a bond "equal to a minimum of 75% of the highest aggregate amount owed by the milk dealer to all producers for a 40-day period during the preceding 12 months." *Id.* § 626.7(c)(1).

used in the Milk Security Act as "amount paid," is "unconstitutional per se and unconstitutional as applied" because it violates the dormant Commerce Clause. (*Id.* at 8.)  Third, Biazzo claims that it is entitled to a declaratory judgment on the following premises: 1) the bond requirement violates the dormant Commerce Clause; 2) if Biazzo continues to pay milk producers for their products upon delivery or shortly thereafter, it will owe those milk producers nothing and will not qualify as a milk dealer; 3) Biazzo is not a milk dealer because "it has never had a physical presence within the Commonwealth, does not sell milk in the state or anywhere within the United States"; and 4) the bond requirement violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.  (*Id.* at 8–9.)

Biazzo attaches the affidavit of Joel Zweig, the company's chief operating officer, to the amended complaint.  (Doc. 13-1, ¶¶ 1–2.)[6]  The affidavit sets forth allegations similar to those contained in the amended complaint.  (*Id.* ¶¶ 1–10.) However, it provides additional relevant information.  (*Id.* ¶ 10.)  It states that milk dealers who purchase milk from Pennsylvania producers have "an increased

---

[6] The court normally may not consider "matters extraneous to the pleadings" when ruling on a motion to dismiss for failure to state a claim.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  But "a limited exception exists for documents that are *integral to or explicitly relied* upon in the complaint."  *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 82 n.4 (3d Cir. 2011) (quoting *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 n.6 (3d Cir. 2010)).  Here, the amended complaint cites to Zweig's affidavit and relies upon the information therein.  (Doc. 13, p. 3).  Therefore, the court considers the affidavit in its analysis of the amended complaint's sufficiency.

relative cost" and must raise the prices of their products. (*Id.*) It avers that this additional cost "makes Biazzo and all other purchasers of Pennsylvania milk less competitive than the manufacturers that purchase raw milk from states other than Pennsylvania." (*Id.*) Moreover, the affidavit states that the bond requirement "severely restricts the operating capital of the company" and, as a result, Biazzo terminated ten employees. (*Id.*)

Defendants filed a motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and an accompanying brief in support on June 17, 2025. (Docs. 16, 17.) Biazzo filed a brief in opposition to the motion to dismiss on July 1, 2025. (Doc. 21.) Defendants filed a reply brief on July 8, 2025. (Doc. 22.) Therefore, Defendants' motion to dismiss is ripe for disposition.

## JURISDICTION AND VENUE

Biazzo's claims arise under the Constitution of the United States, so subject matter jurisdiction is vested in this court pursuant to 28 U.S.C. §§ 1331 and 1343. Venue properly lies in this court pursuant to 28 U.S.C. § 1391(b).

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds as recognized in Mack v. Yost*, 968 F.3d 311, 319 n.7 (3rd Cir. 2020).

Biazzo brings both an as-applied and a facial challenge[7] to the constitutionality of the bond requirement. (Doc. 13, pp. 7–8.) To resolve an as-applied challenge, the court determines whether a law with some permissible uses "is nonetheless unconstitutional as applied" to the challenging party's conduct. *Spence v. Washington*, 418 U.S. 405, 414 (1974). A law is facially invalid if it "could never be applied in a valid manner." *Members of City Council of City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 798 (1984). This standard sets an

---

[7] Biazzo asserts that the bond requirement is "unconstitutional per se and unconstitutional as-applied" to the facts of this case. (Doc. 13, pp. 7–8.) The court assumes that Biazzo meant to mount a facial challenge to the bond requirement's constitutionality.

extremely high bar because the challenger must establish that "no set of circumstances exists under which the [challenged law] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). The distinction between facial and as-applied challenges relates to the "breadth of the remedy employed by the court." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010).

If "a party cannot prevail on an as-applied challenge, it cannot prevail on a facial challenge." *Warner Valley Farm, LLC v. SWN Prod. Co., LLC*, 652 F. Supp. 3d 495, 502 (M.D. Pa. 2023) (citing *United States v. Decastro*, 682 F.3d 160, 163 (2d Cir. 2012)). Ordinarily, the court first determines whether the statute is valid as applied before addressing a facial challenge because "for reasons relating both to the proper functioning of courts and to their efficiency, the lawfulness of the particular application of the law should ordinarily be decided first." *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 485 (1989). If an as-applied challenge fails, so does the corresponding facial challenge. *United States v. Mitchell*, 652 F.3d 387, 415 (3d Cir. 2011) ("Because the statute is constitutional as applied to Mitchell, he has not shown that 'there is no set of circumstances' under which the statute may be applied constitutionally.") Thus, the court will address Biazzo's as-applied challenge to the bond requirement before addressing its facial challenge.

DISCUSSION

The court will first address Counts I[8] and II of the amended complaint, which raise Biazzo's dormant Commerce Clause claims. (Doc. 13, pp. 6–8.) Then, the court will address Count III, which seeks declaratory judgment as to the claims Biazzo raises in Counts I and II and requests that the court find that the bond requirement does not apply to Biazzo. (*Id.* at 8–9.)

## A. Counts I and II–Dormant Commerce Clause Claims

Biazzo alleges that the bond requirement places an undue burden on its ability to do business with Pennsylvania milk producers in violation of the dormant Commerce Clause. (Doc. 13, pp. 6–8.) As explained herein, Pennsylvania milk dealers shoulder the same burden as Biazzo, so the bond requirement affects commerce, not interstate commerce. *See TitleMax of De., Inc. v. Weissmann*, 24 F.4th 230, 240–41 (3d Cir. 2022). Therefore, Biazzo fails to state dormant Commerce Clause claims in Counts I and II of the amended complaint.

Defendants argue that Biazzo's dormant Commerce Clause claims fail because Biazzo does not allege that the bond requirement burdens interstate commerce. (Doc. 17, pp. 4–6.) They claim that because the bond requirement applies to both Pennsylvania and out-of-state milk dealers, it burdens commerce

---

[8] The amended complaint titles its first count as Count II. (Doc. 13, p. 6.) Because this count appears first in the amended complaint, the court assumes that Biazzo meant to title that count as Count I.

generally, not interstate commerce specifically. (*Id.* at 4–5.) Defendants cite

*Owner Operator Independent Drivers Association, Inc. v. Pa. Turnpike*

*Commission*, 383 F. Supp. 3d 353, 384 (M.D. Pa. 2019), *aff'd on other grounds*,

934 F.3d 283 (3d Cir. 2019), in support of this argument. (Doc. 17, p. 5.) In that

case, the plaintiffs alleged that Pennsylvania charged drivers on the Pennsylvania

Turnpike excessive tolls in violation of the dormant Commerce Clause. *Owner*

*Operator*, 383 F. Supp. 3d at 362. But because in-state and out-of-state drivers

paid the same tolls to use the Turnpike, the court found that the law setting those

tolls burdened commerce generally, not interstate commerce. *Id.* at 384.

Therefore, the court dismissed the plaintiffs' dormant commerce clause claim. *Id.*

Defendants argue that the same analysis applies to Biazzo's dormant Commerce

Clause claims. (Doc. 17, p. 6; Doc. 22, pp. 1–2 (citing *Owner Operator*, 383 F.

Supp. 3d at 384; *TitleMax*, 24 F.4th at 241; *Heffner v. Murphy*, 745 F.3d 56, 73 (3d

Cir. 2014).)

Biazzo argues that Defendants' reliance on *Owner Operator* is misplaced.

(Doc. 21, p. 4.) It notes that although the United States Court of Appeals for the

Third Circuit affirmed the district court's dismissal of the plaintiffs' Dormant

Commerce Clause claims in that case, it did so on other grounds and did not

address the distinction between a burden on interstate commerce and commerce

generally. (*Id.* (citing *Owner Operator Indep. Drivers Ass'n v. Pa. Turnpike*

*Comm'n*, 934 F.3d 283, 294 (3d Cir. 2019) *cert. denied*, 140 S. Ct. 959 (2020) (Mem.) (holding that Congress authorized states to impose tolls to generate funding for the types of projects listed in the plaintiffs' complaint, so plaintiffs' dormant Commerce Clause challenge failed)).)  And ultimately, Biazzo emphasizes that this court is not bound to follow *Owner Operator*.  (*Id.* at 4.)

Biazzo also argues that there is no "support for such a finite distinction" between interstate commerce and commerce generally found "in other courts throughout the country."  (*Id.*)  It urges the court to apply the standard set forth in *Pike v. Bruce Church Inc.*, 397 U.S. 137, 142 (1970), which provides when a law incidentally burdens interstate commerce, the law is constitutional so long as the burden it imposes on interstate commerce is not clearly excessive in relation to the local benefits it offers.  (Doc. 21, p. 5.)  Biazzo contends that the court must decide not only whether the bond requirement discriminates against out-of-state interests to the benefit of in-state interests, but also "whether it is burdensome in nature." (*Id.* at 7.)  It avers that the bond requirement forces it to pay more than $500,000 to continue purchasing milk from Pennsylvania milk producers, and that this imposes an "unnecessary burden on it" in violation of the Dormant Commerce Clause.  (*Id.*)

Finally, Biazzo argues that the Milk Board regulation interpreting the term "amount owed" as it appears in the Milk Security Act, 31 P.S. § 626.7(c), to mean "the actual amount the milk dealer lawfully paid the producer" is "unconstitutional

as applied to Biazzo and unconstitutional per se." (*Id.* at 7–8); 7 Pa. Code § 151.9(b)(2).  Biazzo then argues that, based on traditional principles of statutory interpretation, "owed" cannot mean "the actual amount the milk dealer lawfully paid to the producer," and that to impose such a definition through the promulgation of Milk Board regulations violates the dormant Commerce Clause. (*Id.* at 7–11.)[9]

The Constitution gives Congress authority to "regulate Commerce . . . among the several States."  U.S. Const. Art. I, § 8, cl. 3.  Within this authority lies "a further, negative command, known as the dormant Commerce Clause." *Okla. Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 179 (1995).  The dormant Commerce Clause limits "the authority of the States to enact legislation affecting interstate commerce." *TitleMax*, 24 F.4th at 237–38 (quoting *Instructional Sys., Inc. v. Comput. Curriculum Corp.*, 35 F.3d 813, 823 (3d Cir. 1994)).  State laws violate the dormant Commerce Clause "when they seek to build up domestic

---

[9] Although Defendants recognize that the court could construe Biazzo's statutory interpretation argument to challenge the Milk Board's authority to define the term "owed" to mean the amount the milk dealer paid the producer, Doc. 17, p. 6, the court construes this argument to be part of Biazzo's dormant Commerce Clause challenge to the bond requirement.  This is because, in the amended complaint, Biazzo includes the same statutory interpretation argument in Count II, which asserts a dormant Commerce Clause challenge to the bond requirement.  (Doc. 13 p. 8.) Biazzo also connects its statutory interpretation arguments to its constitutional claim in its brief in opposition.  (*See* Doc. 21, pp. 10–11 ("Biazzo alleges imposing such a convoluted interpretation [of the term 'owe'] on it (let alone calling it a milk dealer in the first place) constitutes a deprivation of due process because there is no ability for it to opt out [of] the bond requirement and is a chill on interstate commerce.").)

commerce through burdens upon the industry and business of other States . . . ." *Nat'l. Pork Producers Council v. Ross*, 598 U.S. 356, 369 (2023) (quoting *Guy v. Baltimore*, 100 U.S. 434, 443 (1880)) (citation modified).

The dormant Commerce Clause makes two types of state laws constitutionally suspect. *See TitleMax*, 24 F.4th at 238 (quoting *Instructional Sys*., 35 F.3d at 824). The first type includes laws that regulate or discriminate against interstate commerce directly, favor in-state economic interests over out-of-state economic interests in effect, or control commerce that occurs entirely outside the enacting states borders. *Cloverland-Green Spring Dairies, Inc., v. Pa. Milk Mktg. Bd.*, 462 F.3d 249, 261 (3d Cir. 2006); *TitleMax*, 24 F.4th at 238 (quoting *Instructional Sys.*, 35 F.3d at 824) (citing *Healy v. Beer Inst.*, 491 U.S. 324, 336 (1989)). The court subjects these laws to heightened scrutiny, and the party challenging them has the burden of proving that heightened scrutiny applies. *Cloverland-Green*, 462 F.3d at 261 (quoting *Maine v. Taylor*, 477 U.S. 131, 138 (1986)).

The second type includes laws that "regulate[] even-handedly to effectuate a legitimate local public interest" and impose only "incidental" effects on interstate commerce. *Pike*, 397 U.S. at 142. To determine whether one of these laws is constitutional, the court balances the incidental burdens the law imposes on interstate commerce against the local benefits it provides. *Id.*; *TitleMax*, 24 F.4th

13

at 238 ("This examination is sometimes referred to as *Pike* balancing.")  The

incidental burdens on interstate commerce the court must "assess under *Pike*

consist of 'the degree to which the state action incidentally discriminates against

interstate commerce relative to intrastate commerce.'"  *Heffner*, 745 F.3d at 73

(quoting *Norfolk S. Corp. v. Oberly*, 822 F.2d 388, 406 (3d Cir. 1987)).  These

laws violate the dormant Commerce Clause only if the burden they impose on

interstate commerce is "clearly excessive in relation to the putative local benefits."

*Pike*, 397 U.S. at 142.  Nonetheless, "[o]nce it is clear that the laws do not

discriminate between in-staters and out-of-staters, 'the inquiry as to the burden on

interstate commerce should end' and further analysis of the local benefits is

unnecessary."  *TitleMax of Del.*, 24 F.4th at 241 (quoting *Instructional Sys., Inc.*,

35 F.3d at 827).[10]  Stated more simply, if the plaintiff does not allege that the law

burdens in-state and out-of-state firms differently, the plaintiff fails to state a

dormant Commerce Clause claim.  *Id.*; *Instructional Sys.*, 35 F.3d at 826–27.

---

[10] The Supreme Court of the United States has, in a "small number" of cases, "invalidated state laws under the dormant Commerce Clause that appear to have been genuinely nondiscriminatory, in the sense that they did not impose disparate treatment on similarly situated in-state and out-of-state interests . . . ."  *General Motors Corp. v. Tracy*, 519 U.S. 278, 298 n.12 (1997).  However, those cases dealt with state laws that "undermined a compelling need for national uniformity in regulation."  *Id.*; *Nat'l Pork*, 598 U.S. at 379–80 (recognizing that although the court has invalidated some state laws that appear to pose a nondiscriminatory burden on interstate commerce, the "heartland" of *Pike* balancing lies in whether a state law discriminates between similar in-state and out-of-state interests) (citing *Tracy*, 519 U.S. at 298 n.12).

Here, Biazzo does not argue that the bond requirement falls into the first category of laws that directly regulate interstate commerce, discriminate against interstate commerce in purpose or effect, or regulate commerce that occurs entirely outside the state and are subject to heightened scrutiny.  (Doc. 21, pp. 5–7.)  Instead, it argues that the bond requirement falls into the second category of laws that incidentally places excessive burdens on interstate commerce.  (*Id.* (citing *Pike*, 397 U.S. at 142).)  It argues that the bond requirement fails the *Pike* balancing test because it places an excessive burden on interstate commerce that outweighs its local benefits.  (*Id.*)

Here is a brief summary of Biazzo's claim.  Biazzo is an out-of-state company that may stop buying milk from Pennsylvania milk producers because it must post a bond.  (*Id.* at 7; Doc. 13, p. 7.)  And because the bond requirement may impact a New Jersey business's decision to do business in Pennsylvania and creates higher prices for consumers, it violates the dormant Commerce Clause. (*Id.*)

Defendants note that Biazzo "does not allege any burden on interstate commerce.  Instead, it simply complains about the fact that it has to post the same bond required of in-state businesses," and thus alleges a burden on commerce generally, not interstate commerce.  (Doc. 17, p. 5.)  In response, Biazzo does not dispute this observation.  It merely reiterates that the bond requirement places an

"unnecessary burden on it" and that there is no "support for such a finite

distinction" between interstate commerce and commerce generally "in other courts

throughout the country."  (Doc. 21, pp. 4, 7.)[11]

Biazzo's amended complaint fails to state a cognizable dormant Commerce

Clause claim.  The specific question is whether the law burdens interstate

commerce by placing differing burdens on in-state and out-of-state firms, not

whether compliance with the law economically harms a specific out-of-state firm.

*Heffner*, 745 F.3d at 73.  Antidiscrimination lies at the "core of [the Supreme Court

of the United States's] dormant Commerce Clause jurisprudence," and this

principle forms the "heartland" of the *Pike* analysis.  *Nat'l. Pork*, 598 U.S. at 379–

80.  When the law at issue does not "discriminate between in-staters and out-of-

staters, 'the inquiry as to the burden on interstate commerce should end'" and no

further analysis is required.  *TitleMax*, 24 F.4th at 241 (quoting *Instructional Sys.*,

35 F.3d at 827.).

This principle doomed the dormant Commerce Clause claim in *Owner

Operator*, 383 F. Supp. 3d at 384, because Pennsylvania and out-of-state drivers

---

[11] Biazzo overlooks several Third Circuit opinions that make this exact distinction.  *See
Instructional Sys.*, 35 F.3d at 826–27 ("Thus, where the burden on out-of-state interests rises no
higher than that placed on competing in-state interests, it is a burden on *commerce* rather than a
burden on *interstate* commerce.") (quoting *Old Bridge Chem., Inc. v. N.J. Dept. of Env't Prot.*,
965 F.2d 1287, 1295 (3d Cir. 1992)); *Heffner*, 745 F.3d at 73 ("[T]he regulation here is a burden
on commerce without discriminating against *interstate* commerce.") (citing *Instructional Sys.*, 35
F.3d at 826–27); *TitleMax*, 24 F.4th at 240–241 (quoting *Instructional Sys.*, 35 F.3d at 826–27).

paid the same tolls, so the tolls imposed a burden on commerce instead of interstate commerce.  In *Instructional Systems, Inc.*, 35 F.3d at 827, the court held that the New Jersey Franchise Practices Act was "equally applicable to [in-state] franchisors as to those headquartered elsewhere," and therefore, although it may have burdened commerce, it created "no incidental burdens on interstate commerce for purposes of *Pike* balancing."  In *Heffner*, 745 F.3d at 73, the court affirmed the dismissal of a commerce clause challenge to a Pennsylvania law that restricted where funeral directors could practice because that law imposed "the very same burdens on Pennsylvania funeral directors as it impose[d] on out-of-state interests" and therefore burdened commerce, not interstate commerce.  And in *TitleMax*, 24 F.4th at 240–241, "application of Pennsylvania's usury laws to transactions with Pennsylvanians put [the plaintiff] in no different position than an in-state lender," so further *Pike* balancing was "unnecessary."  *See also Yerger v. Mass. Turnpike Auth.*, 395 Fed. App'x 878, 883 (3d. Cir. 2010) ("[T]he [Fast Lane Discount Program] does not even implicate the *Pike* balancing test because it is available on equal terms to residents and non-residents, and thus places no burden on interstate commerce.") (citing *Doran v. Mass. Turnpike Auth.*, 348 F.3d 315, 322 (1st Cir. 2003)).

Examining the Milk Security Act's effects as pleaded by Biazzo, there is "no reason to suspect that the gainers would be in-state firms or that the losers would

be out-of-state firms." *Nat'l Pork*, 598 U.S. at 378 (quoting *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 473 (1981)) (citation modified). Biazzo's amended complaint neither explains how its status as an out-of-state firm impacts the burden the bond requirement places upon it nor how the bond requirement favors Pennsylvania milk dealers in effect. (Doc. 13, pp. 1–11.) Biazzo only alleges that the bond requirement burdens it and the public by forcing it post the bond or participate in the security fund, incur higher operating costs, and then pass that increased cost onto consumers by raising its prices. (*See id.* at 7.) If anything, that is a burden on commerce generally, but not interstate commerce.

Zweig's affidavit does not change the analysis. In the affidavit, Zweig states that the bond requirement is "unduly burdensome to both the company and the public as it has caused Pennsylvania milk to be more expensive than the milk of surrounding states." (Doc. 13-1, ¶ 10.) But again, it states that the additional expense makes "Biazzo and *all other purchasers of Pennsylvania milk* less competitive." (*Id.* (emphasis added).) The affidavit makes no distinction between in-state and out-of-state Pennsylvania milk purchasers; it suggests that Pennsylvania milk dealers who purchase milk in their home state suffer the same increased costs as out-of-state firms, and their ability to compete in the national milk market is similarly hampered. (*See id.*) No incidental burden on interstate commerce exists when a law's effects restrict in-state and out-of-state firms

18

identically, even when that law has "'devastating economic consequences' on an [out-of-state] firm." *Instructional Sys.*, 35 F.3d at 827 (quoting *Ford Motor Co. v. Insurance Comm'r*, 874 F.2d 926, 943 (3d Cir. 1989) *cert. denied*, 493 U.S. 969 (1989)).

As explained, Biazzo's as-applied challenge fails. Therefore, Biazzo has not shown that "there is no set of circumstances under which the statute may be applied constitutionally," so its facial challenge also fails. *Mitchell*, 652 F.3d at 415 (citation modified). Moreover, because no disparate treatment of out-of-state milk dealers is apparent from Biazzo's amended complaint, and Biazzo offers no rebuttal to Defendants' claim that the burden Biazzo alleges "also falls on in-state businesses," Doc. 17, p. 6, the court will dismiss Counts I and II of the amended complaint with prejudice because amendment would be futile. *Montanez v. Price*, 154 F.4th 127, 151 (3d Cir. 2025) ("[L]eave to amend should be liberally given unless amendment would be inequitable or futile.") (citing *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008)).

## B. Count III

Count III of the amended complaint is titled "Declaratory Judgment." (Doc. 13, p. 8.) Therein, Biazzo requests a declaratory judgment stating that: 1) the bond requirement violates the dormant Commerce Clause; 2) that its interpretation of the

term "owe" as used in the Milk Security Act is correct and that the Milk Board's regulatory interpretation of that term is incorrect; 3) that it does not qualify as a "milk dealer" pursuant to the Milk Security Act; and 4) that "the Pennsylvania statutes referenced above violate Section I of the Fourteenth Amendment to the United States Constitution by denying it equal protection under the law." (*Id.* at 8–9.) The court will dismiss Count III with prejudice for three reasons.

First, declaratory judgment is a form of relief, not a cause of action. *Allen v. DeBello*, 861 F.3d 433, 444 (3d Cir. 2017) ("The Declaratory Judgment Act does not, however, provide an independent basis for subject-matter jurisdiction; it merely defines a remedy."); *see also Mader v. Union Township*, No. 2:20-CV-01138, 2021 WL 3852072, at *8 (W.D. Pa. Aug. 27, 2021) (dismissing a claim for declaratory judgment that lacked an underlying cause of action; *Campbell v. Pa. Sch. Bds. Ass'n*, 336 F. Supp. 3d 482, 504 (E.D. Pa. 2018) (recognizing that a plaintiff must succeed on the merits of the underlying claim to obtain declaratory relief because "[d]eclaratory judgment is a remedy and not a cause of action"); *Argen v. Kessler*, No. CV 18-963, 2019 WL 2067639, at *4 (D.N.J. May 10, 2019) ("[T]here is no such thing as a claim for declaratory relief untethered to some underlying cause of action."); *In re AZEK Building Prods., Inc., Mktg. and Sales Pracs. Litig.*, 82 F. Supp. 3d 608, 625 (D.N.J. 2015) (dismissing the plaintiffs'

declaratory judgment claim because it did not "provide a substantive basis for relief.").

Count III does not raise a cause of action on its own, it merely requests a specific type of remedy. (Doc. 13, pp. 8–9.) And to the extent Biazzo attempts to raise new claims separate from those addressed in Counts I and II in Count III, the cause of action supporting those claims is not clear from the face of the complaint, and they are duplicative of the arguments Biazzo offers in support of Counts I and II. (*See id.*) For example, in Count III, Biazzo requests a declaration that the bond requirement does not apply to it because it does not owe Pennsylvania milk producers payment pursuant to the Milk Security Act. (*Id.* at 9.) Yet it offers the same argument in support of the dormant Commerce Clause claim it raises in Count II. (*Id.* at 8.)

Second, Biazzo's request for declaratory judgment as to Counts I and II, even if properly articulated as a requested remedy in the amended complaint, would be denied because Biazzo fails to state a dormant Commerce Claim in those Counts. (*Id.* at 6.) The court cannot provide Biazzo declaratory relief when Biazzo's claims fail on the merits. *Campbell*, 336 F. Supp. 3d at 504; *see USX Corp. v. Barnhart*, 395 F.3d 161, 166 (3d Cir. 2004)).

Third, Count III merely states constitutional non-sequiturs without pleading a claim.

(Doc. 13, pp. 8–9.)[12]  For example, Biazzo states for the first time in Count III that the bond requirement violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.  (*Id.* at 9.)  Nowhere in the amended complaint does Biazzo offer allegations to support this apparent attempt to state an Equal Protection claim.  These stray, unsupported, and vague assertions of unconstitutionality are insufficient to raise a claim.  *See Garrett*, 938 F.3d at 92–93.

For these reasons, the court will dismiss Count III.  Declaratory judgment is a remedy, not a cause of action, *Allen*, 861 F.3d at 444, so amendment is futile and Count III will be dismissed with prejudice.  *Montanez*, 154 F.4th at 151.

---

[12] Biazzo's brief in opposition to the motion to dismiss suffers from the same tendency to make stray allegations of unconstitutionality without support.  For example, it alleges a "deprivation of due process because there is no ability for it to opt out [of] the bond requirement and is a chill on interstate commerce."  (Doc. 21, p. 11.)  The amended complaint does not contain a due process claim.  (Doc. 13, pp. 1–11.)

CONCLUSION

For the reasons stated herein, the motion to dismiss, Doc. 16, will be granted.  An order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: November 19, 2025